Robert S. Green (SBN 136183)
Emrah M. Sumer (SBN 329181)
**GREEN & NOBLIN, P.C.**
2200 Larkspur Landing Circle
Suite 101
Larkspur, California  94939
Telephone:  (415) 477-6700
Facsimile:  (415) 477-6710
Email:  gnecf@classcounsel.com

James Robert Noblin (SBN 114442)
**GREEN & NOBLIN, P.C.**
4500 East Pacific Coast Highway
Fourth Floor
Long Beach, CA 90804
Telephone: (562) 391-2487
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

Melissa R. Emert*
**KANTROWITZ GOLDHAMER & GRAIFMAN, P.C.**
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645
Telephone: (201) 391-7000
Facsimile  (201) 307-1086
memert@kgglaw.com

\**Pro Hac Vice* application to be submitted

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY KAUFMAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>ROBERT A. BAFFERT; BOB BAFFERT RACING STABLES, INC.; and ZEDAN RACING STABLES, INC.,<br><br>        Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jeffrey Kaufman, on behalf of himself and all other similarly situated individuals, and through his undersigned counsel, bring this Class Action Lawsuit (the "Complaint") against Defendants Robert A. Baffert, Bob Baffert Racing Stables, Inc. (collectively, "Baffert" or the "Baffert Defendants"), and Zedan Racing Stables, Inc. ("Zedan Racing") (collectively "Defendants") and, based upon personal knowledge and the investigation of counsel, allege as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this Complaint on behalf of himself and the "Class" (defined below) against Defendant Baffert for violations of (i) the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)-(d) ("RICO"); and (ii) the California Control of Profits of Organized Crime Act, Cal. Penal Code § 186 ("CCPOCA"); and against Defendants Baffert and Zedan Racing for state common law and equitable fraud.

2.     Specifically, as detailed more fully herein, Baffert participated in the operation of the affairs of one or more "association-in-fact" enterprises, described more fully below, and conspired to do so, through a RICO pattern of racketeering activity.

3.     As described herein, Baffert's multiple and repeated acts of doping and entering horses into thoroughbred races, including the Kentucky Derby, constituted racketeering activity as defined in 18 U.S.C. § 1961(1)(A), 18 U.S.C. § 1961(1)(B), and Cal. Penal Code § 186 in that he (1) engaged in illegal gambling, which is chargeable under Cal. Penal Code § 186(a)(8); and (2) violated U.S.C. § 1952(a)(3) by traveling in interstate commerce and using a facility in interstate and foreign commerce – that is, the simulcast broadcasting by wire and television of the Kentucky Derby and other races – to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any unlawful activity, including in violation of the laws of California, by engaging in illegal gambling chargeable under Cal. Penal Code § 186(a)(8).

00117309.000

4.     Specifically, Baffert's multiple and repeated acts of illegally doping and entering horses into thoroughbred races in the State of California and elsewhere constituted a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) and Cal. Penal Code § 186 as he has committed at least two incidents of criminal profiteering within a ten-year period which are related and, as a result of his continued involvement in thoroughbred racing, pose a threat of continuing criminal activity extending indefinitely into the future.

5.     Plaintiff's claims also involve conspiracies between Baffert and other owners and or trainers to commit the above-described acts to engage in illegal gambling and/or horse doping through a pattern of racketeering activity.

6.     For example, on May 1, 2021, Defendants entered a doped horse, Medina Spirit, into the 147th running of The Kentucky Derby at Churchill Downs in Louisville, Kentucky and won $1,860,000.00 as part of a horse-doping scheme in thoroughbred racing.

7.     The Baffert Defendants' unlawful conduct directly injured Plaintiff in his business and property. Specifically, on May 1, 2021, Plaintiff bet upon the horse that finished in second place behind the drugged horse, Medina Spirit, at the Kentucky Derby at Churchill Downs on May 1, 2021.

8.     Plaintiff Jeffrey Kaufman's betting tickets cost $110.00 and would have provided a minimum potential payoff of at least $4,000. Plaintiff's wagers would have won, but for the illegal, drug-induced win by Medina Spirit. Thus, Plaintiff is entitled to bring a civil action against Defendants.

9.     The Baffert Defendants and Defendant Zedan Racing further engaged in common law and equitable fraud in that Defendants misrepresented to bettors that they (1) entered a horse that complied with the race track rules; (2) that the misrepresentation was material because pari-mutuel wagering cannot function without fairness and administering a banned substance to a horse is antithetical to the spirit of fair competition; (3) Defendants knew or believed that their

00117309.000

representation was false; (4) Defendants intended that bettors such as Plaintiff would rely on  their misrepresentation to induce them to make wagers, as a track's purse structure comes  directly from the total amount that is bet by the public; (5) Plaintiff and the Class relied on these misrepresentations; and (6) Plaintiff and the Class were damaged by Defendants' misrepresentations through the loss of their bets and winnings.

## PARTIES AND OTHER PARTICIPANTS

10.     Plaintiff resides in Highland Beach, Florida and is a part-time, pari-mutuel thoroughbred racing bettor.

11.     Upon information and belief, Defendant Robert A. Baffert resides and conducts much of his business, Bob Baffert Racing Stables, Inc., in or around Los Angeles County, California and is a licensed  horse trainer of horses, including Medina Spirit, and was the trainer of Medina Spirit during the race in question.

12.     Defendant Zedan Racing Stables, Inc. is based in Lexington, Kentucky, with its racing operations based in Los Angeles, California. Zedan Racing was the owner of Medina Spirit during the race in question.

## JURISDICTION AND VENUE

13.     Plaintiff, individually and on behalf of the Class, asserts claims against Defendants Robert Baffert and Bob Baffert Racing Stables, Inc. that are founded upon federal questions subject matter jurisdiction under 28 U.S.C. § 1331, in regard to the Racketeer Influenced and Corrupt Organizations Act,18  U.S.C.  § 1962 ("RICO").

14.     Venue for the Civil RICO claims is appropriate in this Court because Defendants Robert Baffert and Bob Baffert Racing Stables, Inc. reside and transact their affairs and conduct business in the State of California and, specifically, through this District.

15.     Plaintiff, individually and on behalf of the Class, also asserts common law fraud and equitable fraud claims against all Defendants. As set forth

00117309.000

above, 28 U.S.C. § 1331 vests this Court with original subject matter jurisdiction. Venue is also proper for these claims in this Court because Defendants reside and transact their affairs and conduct business in the State of California and, specifically, through this District.

16.     This Court also has diversity jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because this is a class action involving more than 100 class members, the amount in controversy exceeds $5 million, exclusive of interest and costs, and Plaintiff and Class Members are citizens of states that differ from Defendants.

## FACTS

## I.   THE WORLD OF PARI-MUTUEL BETTING AND THOROUGHBRED RACING

17.     Pari-mutuel betting is a system used in gambling on events, like thoroughbred racing, in  which participants finish in a ranked order. All bets of a particular type are placed together in a  pool and payoff odds are calculated by sharing the pool among all winning bets after taxes and  the "house-take" are removed. The payoff is determined by the pool size minus the "take," and  then divided by the number of winning tickets.

18.     Transmitting, re-transmitting, receiving, and rebroadcasting thoroughbred racing  occurring live at an in-state location to one or more out-of-state locations by television or radio,  through satellite or other electrical or electronic means, or receiving at an in-state location events which occur live at an out-of-state location, known as simulcasting, allows bettors to place wages without being physically present at the facilities where the race is occurring live. Race  simulcasting also involves transmitting pari-mutuel wagering information to a central website, so   that all bettors, even those in different locations, may participate in the same betting pool.

00117309.000

19.    Live thoroughbred races occur at various venues within the United States of America, including at Churchill Downs, one of the world's most prestigious and legendary racetracks. Churchill Downs is located in Louisville, Kentucky. The Kentucky Derby is simulcast to other various locations via television and through internet betting sites such as TwinSpires.com.

20.    Bettors and members of the public expect that horses will give their best effort in every race and that all horses entered in every race will not be racing under the influence of a drug or foreign substance that has been administered in violation of racing rules and regulations.

21.    Individuals who are trainers of thoroughbred racing horses in the State of California are required to be licensed under and follow California State laws, rules, and regulations.

22.    Furthermore, all competitors at Churchill Downs must comply with Churchill Downs racetrack rules and regulations (the "Racetrack Rules"). The Racetrack Rules are strictly against the entry or participation of a horse in any race while carrying drugs or other banned substances in its body. By entering to compete, the applicants represent that they have abided by the Racetrack Rules.

23.    Bettors, including Plaintiff and Class Members, rely on participants' representation that they comport with these laws, regulations, and rules in order to properly determine which horses to bet on.

24.    Defendants and other owners and trainers intend that bettors rely on these representations in order to encourage wagering in racing, thereby increasing the purse total.

**II.    DEFENDANTS VIOLATED THE APPLICABLE CALIFORNIA LAW AND RACING RULES, RESULTING IN PLAINTIFF'S AND CLASS MEMBERS' DAMAGES**

25.    Plaintiff makes an effort to conduct in-depth research prior to selecting horses upon which to place their bets. This research is based upon public information provided to them, some of which is provided by trainers such as

00117309.000

the Baffert Defendants,[1] and upon the understanding that horse doping is banned in the sport of thoroughbred racing. For this reason, Defendants' misrepresentation that they were in compliance with laws, regulations, and Racetrack Rules on race day are material.

26.   On May 1, 2021, Plaintiff placed his bet for the 147th running of the Kentucky Derby at Churchill Downs based upon their research and upon Defendants' material misrepresentation that they were in compliance with the laws, regulations, and Racetrack Rules governing the Kentucky Derby.

27.   Medina Spirit won the race, contrary to what Plaintiff's analysis and observations of the horse's previous racing form and analysis of the race suggested would be the result. Consequently, the other horses on which Plaintiff placed his bet finished second.

28.   Following Medina Spirit's victory on May 1, testing from post-race blood samples revealed that Medina Spirit had been doped with a performance-enhancing substance, betamethasone, indicating a violation of the Commonwealth of Kentucky's equine medication protocols. As a result, Baffert was suspended indefinitely by Churchill Downs, however, Plaintiff's pari-mutuel wagers were not altered. Further, assuming Medina Spirit is eventually disqualified by the Churchill Downs Stewards and placed last, the prize money for the race will be redistributed with the 2nd place finisher receiving the 1st place prize money, the 3rd place finisher receiving the 2nd place prize money, etc., However, the bettors of the race, including Plaintiff, will not receive the payoffs they would have been entitled to, but for the illegal participation of Medina Spirit.

29.   Upon information and belief, all Defendants knew that betamethasone had been administered to Medina Spirit since the horse was

---

[1] This public information includes, but is not limited to, press conferences, interviews, the recording and dissemination of workouts, and reports on the general condition of the horse.

stabled at Zedan Racing and was under Defendants' control, and since Defendant Robert Baffert himself admitted that Medina Spirit's positive test "may have been the result of exposure from an ointment that was applied to the colt for dermatitis."[2]

30.    While betamethasone is a Class C drug that is allowed in Kentucky as a therapeutic, state rules require at least a 14-day withdrawal time before racing, and any level of detection on race day is a violation.[3]

31.    If Medina Spirit had been properly prohibited from competing as a result of the failure to meet this 14-day withdrawal requirement, Plaintiff and Class Members would have won for the following types of bets: (1) win (bettor picks the horse that wins); (2) place (bettor picks the horse that finishes either first or second); (3) show (bettor picks the horse that finishes first, second, or third); (4) exacta (bettor picks the two horses that finish first and second, in the exact order); (5) trifecta (bettor picks the three horses that finish first, second, and third, in the exact order); (6) superfecta (bettor picks the four horses that finish first, second, third, and fourth, in the exact order); (7) pick-3, pick-4, or pick-5 wagers; and (8) pick-6 pools (bettors who correctly selected Mandaloun, the 28-1 long shot who, following Medina Spirit's disqualification, would be the Derby winner in their pick-6 wagers).

32.    But for the illegal entrance of Medina Spirit into the race, Plaintiff would not have lost $110 invested in the race and would have instead won in excess of $4,000.00.

//

//

//

_____

[2] *See* https://www.bloodhorse.com/horse-racing/articles/250061/baffert-ointment-could-have-caused-derby-drug-positive (last accessed May 11, 2021).
[3] *Id.*

00117309.000

## III.    THE RICO ENTERPRISES

### A.    The Bob Baffert and Bob Baffert Racing Stables, Inc. Enterprises

33.    Defendant Bob Baffert Racing Stables, Inc. is an "enterprise" within the meaning of 18 U.S.C. 1961(4).

34.    Defendant Robert Baffert, as an individual, is also an "enterprise" within the meaning of 18 U.S.C. 1961(4).

35.    At all relevant times, the Baffert Defendants have been, and continue to be, engaged in activities affecting interstate commerce, namely, through training horses racing at various tracks around the country, through entering horses into competition in various states, including racetracks in California and Kentucky, through race simulcasting and the rebroadcasting by television or radio of thoroughbred races occurring live at Churchill Downs and other racetracks to one or more out-of-state locations, and through advertisement of their activities via the Bob Baffert Racing Stables, Inc. website.[4]

36.    As part of their business model, the Baffert Defendants train horses owned by other parties, such as Zedan Racing, in order to obtain a portion of the profits from horse winnings, including casino revenues when applicable. To accomplish this purpose, the Baffert Defendants have been known to have used betamethasone and other similar performance-enhancing drugs to enhance the performance of their trained horses and alter the results of publicly held horse racing contests in their trained horses' favor.

37.    Upon information and belief, Bob Baffert Racing Stables, Inc. has operated as a continuing unit for many years, demonstrating sufficient longevity to permit those associated with the enterprise to pursue the enterprise's purpose. The Baffert Defendants have continued in operation, despite several doping violations.

---

[4] See http://www.bobbaffert.com/ (last accessed May 11, 2021).

38.     As owner of Bob Baffert Racing Stables, Inc. and trainer, Defendant Robert Baffert profits by the performance of any horse he enters in a race that finishes in first, second, third place, or any place that pays in that particular race.

**B.     The Zedan Racing Stables, Inc. Enterprise**

39.     Defendant Zedan Racing Stables, Inc. is an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

40.     Upon information and belief, Defendant Zedan Racing is the owner of several thoroughbreds trained by Baffert, including Medina Spirit. As owner of the thoroughbreds, Zedan Racing conducts, manages, and controls the affairs of the enterprise.

41.     Zedan Racing has been and continues to be engaged in activities affecting interstate commerce, namely, racing at various tracks around the country, through entering horses into competition in various states, including racetracks in California and Kentucky, and through race simulcasting and the rebroadcasting by television or radio of thoroughbred races occurring live at Churchill Downs and other racetracks to one or more out-of-state locations.

42.     As the owner of the horses, including Medina Spirit, Zedan Racing profits by the performance of any Zedan Racing horse that is entered in a race and finishes in first, second, third place, or any place that pays in that particular race.

**C.     The Zedan-Baffert Enterprise**

43.     At all relevant times, there has been and continues to be an "association-in-fact" enterprise within the meaning of 18 U.S.C. § 1961(4) consisting of Defendant Zedan Racing Stables, Inc., Defendant Robert Baffert, and Defendant Bob Baffert Racing Stables, Inc. (the "Zedan-Baffert Enterprise").

44.     Zedan Racing, at all times material hereto, served as the owner of the horses. Defendants Robert Baffert and Baffert Racing Stables, Inc., at all times material hereto, trained the horses.

00117309.000

45.    At all relevant times, the Zedan-Baffert Enterprise has been, and continues to be engaged in activities affecting interstate commerce, namely, racing at various  tracks around the country and through entering horses into competition in various states,  including racetracks in California and Kentucky, through race simulcasting and the rebroadcasting by television or radio of thoroughbred races occurring live at Churchill Downs and other racetracks.

46.    The Zedan-Baffert Enterprise is separate and distinct from the members  themselves.

47.    Defendants Baffert and Zedan Racing are each associated together for the common purpose of raising, training, and racing horses in order to win thoroughbred races, like the Kentucky Derby at issue here.

48.    The Zedan-Baffert Enterprise has operated as a continuing unit since at least early 2020 and continues, to this day, demonstrating longevity to permit those associated with the enterprise to pursue the enterprise's purpose, as the partnership is  ongoing and has continued, despite Baffert's past of horse-doping violations.

49.    Each member of the Zedan-Baffert Enterprise performs a role in the group  consistent with its organizational structure. For example, Zedan Racing conducts the affairs of the Zedan-Baffert enterprise by purchasing thoroughbred race horses at auction or through other means and placing them in the care of Baffert Racing Stables, Inc., while Baffert manages and controls the training of Zedan Racing's horses.

## IV.    BAFFERT'S PATTERN OF RACKETEERING ACTIVITY

### A.    Federal Statutory Violations

50.    The Baffert Defendants' multiple and repeated acts of doping horses competing in thoroughbred races in the states across the country, as more fully set forth on the attached **Exhibit 1**, constitute a pattern of racketeering activity as defined in 18  U.S.C. § 1961(i), (1)(A), and (1)(B).

51.     The racketeering activity includes violations of the Travel Act, 18 U.S.C. § 1952(a)(3), through horse doping in pari-mutuel sports betting. Defendants have traveled and used a facility in interstate and foreign commerce – that is, the simulcast broadcasting by wire and television of races at Churchill Downs and other racetracks – to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any unlawful activity, including in violation of the laws of California, by engaging in illegal gambling chargeable under Cal. Penal Code § 186(a)(8).

**B.     Relatedness**

52.     Baffert's acts are not isolated events; rather they are a pattern of events related to each other in that they have similar purposes, participants, methods of commission, and other distinguishing characteristics. Relatedness is also established by the fact that all acts were done for the purpose of winning thoroughbred races, including but not limited to the Kentucky Derby.

53.     For example, in January 2021, the California Horse Racing Board voted to let eventual 2018 Triple Crown winner and Baffert-trained horse, Justify, keep his Santa Anita Derby victory, *despite the detection of scopolamine in postrace samples in him and another horse trained by Baffert*. The positive tests were revealed in a New York Times story in September 2019.[5]

54.     On October 20, 2020, a Baffert-trained horse was disqualified from third to last in the Kentucky Oaks, which was held on September 4, 2020, after testing positive with *twenty-seven (27) picograms of betamethasone*. Baffert did not appeal and was fined $1,500.[6]

55.     On July 25, 2020, another Baffert-trained horse finished second in a race at Del Mar in California *then tested positive after the race for the medication,*

---

[5] See https://apnews.com/article/ky-state-wire-bob-baffert-sports-360b419b7f6fde781c78899976e2be7c (last accessed May 11, 2020).
[6] *Id.*

1    *dextromethorphan*. Baffert was fined $2,500 for the violation on November 30,

2    2020.[7]

3         56.     In May 2020, two Baffert-trained horses tested positive for the

4    painkiller lidocaine after victories at Oaklawn Park. Tests revealed 185 picograms

5    in one horse, and 46 in the other. Arkansas stewards initially fined and suspended

6    Baffert fifteen (15) days for the violation. His appeal was heard, and the

7    suspension was lifted, with fines reduced to $5,000 per horse.[8]

8         57.     On August 3, 2019, a Baffert-trained horse that finished fourth in a

9    race at Del Mar tested positive for phenylbutazone. Baffert was fined $1,500 for

10    violation of the California Horse Racing Board rules. Baffert had been fined

11    $5,000 just a week earlier for the same violation with another horse.

12         58.     These and many other confirmed acts of horse doping by Baffert in

13    recent years and throughout his career were attempts to further his goal of

14    collecting the winning purse from the events in which his trained horses

15    compete. Although continually fined by stewards for medication violations, the

16    violations have continued, finally leading to a violation in the most important horse

17    race in America, the 147th running of the Kentucky Derby.

18         59.     Moreover, in a further pattern of deceit, Baffert released the following

19    statement to the press on November 4, 2020, just two days before one of the

20    biggest racing events of the year, the Breeder's Cup:

21            "2020 has been a difficult year for everyone. It has been no exception
22            for my family, my barn, and me. I am very aware of the several
             incidents this year concerning my horses and the impact it has had on
23            my family, horse racing, and me. I want to have a positive influence
24            on the sport of horse racing. Horses have been my life and I owe
             everything to them and the tremendous sport in which I have been so
25            fortunate to be involved. We can always do better and that is my goal.
26            Given what has transpired this year, I intend to do everything possible
             to ensure I receive no further medication complaints. As such, I want

27

28    [7] *Id.*
    [8] *Id.*

to announce that, beginning immediately, I plan to implement the following procedures in an effort to make my barn one of the leaders in best practices and rule compliance:

1.   I am retaining Dr. Michael Hore of the Hagyard Equine Medical Institute to add an additional layer of protection to ensure the well-being of horses in my care and rule compliance.
2.   I am increasing the training and awareness of all my employees when it comes to proper protocols.
3.   I am personally increasing my oversight and commitment to running a tight ship and being careful that protective measures are in place.

I want to raise the bar and set the standard for equine safety and rule compliance going forward. For those of you that have been upset over the incidents of this past year, I share in your disappointment. I humbly vow to do everything within my power to do better. I want my legacy to be one of making every effort to do right by the horse and the sport."[9]

60.   Bettors were asked to assume that the Baffert Defendants had cleaned up their act and would be taking every step possible to ensure the horses in their care would no longer be administered illegal drugs prior to racing. Bettors, including Plaintiff and the Class, relied on these assurances from the Baffert Defendants.

61.   On May 12, 2021, Defendant Robert Baffert's attorney, Craig Robertson, stated the following on the previously represented hiring of Dr. Michael Hore:

"There were initial discussions and plan to begin the process of it materializing … They did not materialize as expected due to COVID, but I've had conversations with Dr. Hore the last couple days about that very subject and discussing about getting that back on track."[10]

---

[9] *See* [Baffert Issues Statement on Medication Issues (thoroughbreddailynews.com)](#) (last accessed May 13, 2021).
[10] [Hore's Advisory Role for Baffert Did Not Materialize - BloodHorse](#) (last accessed May 13, 2021).

62.     Thus, once again, bettors (including Plaintiff and the Class) were misled to place wagers under misleading circumstances, as the Baffert Defendants knowingly provided false information to the public and manipulated the media in order to enhance their reputation. This misrepresentation comes at the detriment of the bettors who rely on public information when betting on races, as discussed *supra*.

### C.     Continuity

63.     Baffert's related pattern of racketeering acts and other violations have extended as far back as at least 1993, and have continued through the present, as shown in **Exhibit 1** and further highlighted in Section IV(b) above.

64.     Baffert's excuses for the doping violations he has committed over the years have included the following:

a.     A bagel containing poppy seeds may have been placed in his barn;

b.     an employee wearing a "Salonpas" pain relief patch on his back may have transferred lidocaine from the patch to the horses when the employee applied their tongue ties; and

c.     a groom, who had been taking cough syrup, peed on hay in a horse stall and the horse then ate the hay and tested positive.

d.     the feed that Triple Crown winner, Justify, ate contained Jimson Weed, which was responsible for Justify's positive drug test for scopolamine after his victory in The Santa Anita Derby.

65.     These related predicate acts (and non-credible incredible excuses), constitute a pattern of racketeering activities affecting interstate commerce designed to harm multiple parties. There is no foreseeable endpoint to Baffert's acts of racketeering against bettors like Plaintiff and the Class, which qualify as a continued threat of long-term racketeering activity to future victims.

66.     Defendant Baffert, despite having been banned from racetracks in the past for doping, continues to train horses and enter them into racing competitions

00117309.000

to this day, including two horses in the 146th Preakness, to be run May 15th at Pimlico (one of which is Medina Spirit, who just tested positive in the Kentucky Derby).

## CLASS ACTION ALLEGATIONS

67.    Plaintiff brings this action under Federal Rule of Civil Procedure 23 against Defendants individually and on behalf of all others similarly situated. Plaintiff asserts all claims on behalf of the Class, defined as follows:

**Nationwide Class**

> All Kentucky Derby bettors who would have won their bets and winnings had Medina Spirit been properly prohibited from competing in the Kentucky Derby on May 1, 2021 or competed without the aid of an illegal drug.

68.    Excluded from the Nationwide Class (also defined as "Class") are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter, and members of their immediate families and judicial staff.

69.    Plaintiff reserves the right to amend the above definitions or to propose alternative or additional subclasses in subsequent pleadings and motions for class certification.

70.    The members of the Class are referred to herein as "Class Members."

71.    Plaintiff seeks the certification of the Class under Rule 23 and RICO.

**A.    Class Certification is Appropriate**

72.    The proposed Class meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

73.    Numerosity: The proposed Class is believed to be so numerous that joinder of all members is impracticable.

00117309.000

74.     Typicality: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through Defendants' uniform misconduct. The same event and conduct that gave rise to Plaintiff's claims are identical to those that give rise to the claims of every other Class Member because Plaintiff and each member of the Class lost money as a result of Defendants' RICO violations and violations of common law.

75.     Adequacy: Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class that he seeks to represent; Plaintiff has retained counsel competent and highly experienced in consumer protection class action litigation; and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

76.     Superiority: A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for members of the Class individually to effectively redress Defendants' wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

77.     Commonality and Predominance: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual

00117309.000

members of the Class. Common questions for the Class include:

    a.    Whether Defendants engaged in the wrongful conduct alleged herein;

    b.    Whether the Baffert Defendants engaged in RICO violations as alleged herein;

    c.    Whether Defendants' conduct, as alleged herein, resulted in or was the proximate cause of the monetary losses suffered by Plaintiff and the Class;

    d.    Whether Plaintiff and the Class suffered injury as a proximate result of Defendants' actions;

    e.    Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief;

    f.    Whether Defendants' actions alleged herein constitute fraud;

    g.    Whether Defendants' actions alleged herein constitute equitable fraud; and

    h.    Whether Plaintiff and Class members are entitled to punitive damages.

## FIRST CAUSE OF ACTION
### Violations of the Federal RICO Act, 18 U.S.C. § 1962(c)
### (On behalf of the Class against Defendants Robert Baffert and Bob Baffert Racing Stables, Inc.)

78. All paragraphs set forth above are incorporated by reference as if fully set forth herein.

79. Plaintiff and Class Members are persons "capable of holding a legal or beneficial interest in property" and thus, are "person[s]" within the meaning of 18 U.S.C. § 1961(3).

80. The Baffert Defendants is also a person or entity "capable of holding a legal or beneficial interest in property" and thus, is a "person" within the meaning of 18 U.S.C. § 1961(3).

00117309.000

81.     Zedan Racing is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and 1962(c). Zedan Racing was engaged in activities affecting interstate commerce at all times relevant to this complaint.

82.     The Zedan-Baffert Enterprise is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and 1962(c). The Zedan-Baffert Enterprise was engaged in activities affecting interstate  commerce at all times relevant to this complaint.

83.     Baffert was associated with the enterprises of Zedan Racing and the Zedan-Baffert Enterprise and has conducted or  participated, directly or indirectly, in the  management and operation of  the affairs of  each  through a pattern of racketeering activity under 18 U.S.C. §§  1961(1) and 1961(5).

84.     Baffert has conducted or participated, directly or indirectly, in the conduct of the enterprises through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

85.     The pattern of racketeering activity under 18 U.S.C. §§ 1961(1)(A) and (5)  includes the multiple, repeated, and continuous acts of engaging in gambling chargeable under  California law, which prohibits Defendants from engaging in illegal gambling, which is chargeable under Cal. Penal Code § 186(a)(8).

86.     The pattern of racketeering activity under 18 U.S.C. §§ 1961(1)(B), 1961(5),  and 18 U.S.C.  § 1952(a)(3) also includes traveling in interstate commerce and using a facility  in  interstate  and  foreign  commerce – that is, the simulcast broadcasting by wire and television of races at Churchill Downs and other tracks – to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any unlawful activity, including in violation of the laws of California, by engaging in illegal gambling chargeable under Cal. Penal Code § 186(a)(8).

00117309.000

87.     As a direct result of Defendants' violation of 18 U.S.C. §§ 1962(c), Plaintiff and the Class have  suffered substantial injury to their business or property within the meaning of 18 U.S.C. §§ 1964(c), including damages in the amounts alleged in the Complaint and to be further determined at trial. Plaintiff and the Class are "persons" under 18 U.S.C. § 1962 and may sue therefore in this Court and "recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee," pursuant to 18 U.S.C. § 1964(c).

<u>SECOND CAUSE OF ACTION</u>
**Violations of 18 U.S.C. § 1962(d) by Conspiring to Violate 18 U.S.C. 1962(c) (On behalf of the Class against Defendants Robert Baffert and Bob Baffert Racing Stables, Inc.)**

88.     All paragraphs set forth above are incorporated by reference as if fully set forth herein.

89.     Plaintiff and Class Members are persons "capable of holding a legal or beneficial interest  in property" and thus, are "person[s]" within the meaning of 18 U.S.C. § 1961(3).

90.     The Baffert Defendants  are also "person[s]" or "entit[ies]" that are "capable of holding a legal or beneficial interest in property" and thus, are a person or entity within the meaning of 18 U.S.C. § 1961(3).

91.     The Baffert Defendants  conspired with other individuals within the meaning of 18 U.S.C. § 1962(d) to violate  18 U.S.C. § 1962(c).  Specifically, upon information and belief, the Baffert Defendants conspired together and with other individuals to conduct or participate, directly or indirectly, in the pattern of racketeering activity set forth in this Complaint.

92.     This act of conspiring to engage in the pattern of racketeering activity alleged herein, which falls under 18 U.S.C. §§ 1961(1)(A), 1961(1)(B), and 1961(5),  includes the multiple, repeated, and continuous acts of engaging in illegal gambling, which is also chargeable under Cal. Penal Code § 186(a)(8).

00117309.000

93.     The pattern of racketeering activity under 18 U.S.C. §§ 1961(1)(B), (5), and 18 U.S.C. § 1952(a)(3) also includes traveling in interstate commerce and using a facility in interstate and foreign commerce – that is, the simulcast broadcasting by wire and television of races at Churchill Downs and other tracks – to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any unlawful activity, including in violation of the laws of California, by engaging in illegal gambling chargeable under Cal. Penal Code § 186(a)(8).

94.     As a direct result of Defendants' violation of 18 U.S.C. § 1962(c), Plaintiff and the Class have suffered substantial injury to their business or property within the meaning of 18 U.S.C. § 1964(c), including damages in the amounts alleged in the Complaint, to be further determined at trial.

## THIRD CAUSE OF ACTION
### Common Law Fraud
### (On behalf of the Class against all Defendants)

95.     All paragraphs set forth above are incorporated by reference as if fully set forth herein.

96.     Defendants misrepresented to bettors that they entered a horse that complied with the Racetrack Rules, including and especially those regarding horse doping. The Baffert Defendants also misrepresented that they would be retaining Dr. Michael Hore prior to the race to ensure rule compliance.

97.     Defendants made these misrepresentation by virtue of, among other things, presenting Medina Spirit to race in the Kentucky Derby, as though they were compliant with Racetrack Rules.

98.     The Defendants' misrepresentation was material because pari-mutuel wagering cannot function without fairness and administering a banned substance to a horse is unethical and in contra to the spirit of fair competition.

99.     Upon information and belief, defendants knew or believed that their representation was false.

00117309.000

100.    Defendants intended that bettors such as Plaintiff would rely on their misrepresentation to induce them to make wagers, as a track's purse structure and bet payouts come directly from the total amount bet by the public.

101.    Plaintiff and Class Members relied on these misrepresentations when researching and selecting horses upon which to place their bets.

102.    Plaintiff and Class Members were damaged due to Defendants' misrepresentations through the loss of their bets and winnings.

### FOURTH CAUSE OF ACTION
**Equitable Fraud**
**(On behalf of the Class against all Defendants)**

103.    All paragraphs set forth above are incorporated by reference as if fully set forth herein.

104.    Defendants misrepresented to bettors that they entered a horse that complied with the Racetrack Rules, including and especially those regarding horse doping. The Baffert Defendants also misrepresented that they would be retaining Dr. Michael Hore prior to the race to ensure rule compliance.

105.    These misrepresentations were material because pari-mutuel wagering cannot function without fairness and administering a banned substance to a horse is antithetical to the spirit of fair competition.

106.    Defendants intended that bettors such as Plaintiff would rely on their misrepresentations to induce them to make wagers, as a track's purse structure comes directly from the total amount bet by the public.

107.    Plaintiff and Class Members relied on these misrepresentations when researching and selecting horses upon which to place their bets.

108.    Plaintiff and Class Members were damaged, due to Defendants' misrepresentations, through the loss of their bets and winnings.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court grant judgment against Defendants and in favor of Plaintiff as follows:

00117309.000

a.      certifying this action as a class action under Fed. R. Civ. P. 23,
defining the Class as requested herein, appointing the undersigned as
Class counsel, and finding that Plaintiff is a proper representative of
the Class requested herein;

b.      awarding damages in favor of Plaintiff and the Class against the
Baffert Defendants, with pre- and post-suit interest thereon and other
appropriate monetary relief, including attorney fees, expenses, costs,
and such other further relief as is just and proper, for their violations
of federal RICO law;

c.      awarding injunctive relief enjoining the Baffert Defendants from
engaging in any further racketeering acts;

d.      ordering the Baffert Defendants to divest themselves of any interest
(direct or indirect) in any enterprise, and imposing reasonable
restrictions on the Baffert Defendants' future activities in
thoroughbred racing;

e.      requiring Defendants to pay the costs involved in notifying the Class
Members about the judgment and administering the claims process;

f.      awarding damages against all Defendants, jointly and severally,
together with pre- and post-suit interest thereon, for the common law
fraud claims against them;

g.      awarding Plaintiff reasonable costs and expenses incurred in this
action, including but not limited to counsel fees and expert fees;

h.      ordering Defendants to pay to Plaintiff and the Class the amount they
would have won, but for the illegal doping of Medina Spirit;

i.      awarding Plaintiff and the Class treble, consequential, and punitive
damages; and

j.      awarding Plaintiff such other and further relief as the Court may
deem just and proper.

00117309.000

1

## **DEMAND FOR JURY TRIAL**

2          Plaintiff hereby demands a trial by jury on all appropriate issues raised in

3    this Class Action Complaint.

4

5    DATED:  May 24, 2021              **GREEN & NOBLIN, P.C.**

6

7

8                                    By:   /s/ Robert S. Green
                                          Robert S. Green
9

10                                        James Robert Noblin
                                          Emrah M. Sumer
11                                        2200 Larkspur Landing Circle, Ste. 101
                                          Larkspur, CA  94939
12                                        Telephone: (415) 477-6700
                                          Facsimile: (415) 477-6710
13                                        -and-
14                                        James Robert Noblin (SBN 114442)
15                                        4500 East Pacific Coast Highway
                                          Fourth Floor
16                                        Long Beach, CA 90804
                                          Telephone: (562) 391-2487
17                                        Facsimile: (415) 477-6710
18                                        Email: gnecf@classcounsel.com

19
                                          Melissa R. Emert*
20                                        **KANTROWITZ GOLDHAMER &**
21                                        **GRAIFMAN, P.C.**
                                          135 Chestnut Ridge Road, Suite 200
22                                        Montvale, NJ 07645
23                                        Telephone: (201) 391-7000
                                          Facsimile  (201) 307-1086
24                                        memert@kgglaw.com
25
26                                        *Counsel for Plaintiff and the Proposed*
                                          *Class*
27

28

00117309.000